Filed 4/15/15  P. v. Ibarra CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>MARIO IBARRA,<br><br>    Defendant and Appellant. | F068125<br><br>(Super. Ct. No. MCR046727)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Madera County.  Ernest J. LiCalsi, Judge.

Diane Nichols, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein and Henry J. Valle, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

While on parole, defendant Mario Ibarra lived with his son Mariano Arredondo[1] in Chowchilla. A search warrant was obtained for the residence because police believed Mariano was selling methamphetamine. When the warrant was executed, defendant was present in the home alone. A digital scale containing residue of suspected methamphetamine and two shotgun shells were found in the kitchen. At a parole revocation hearing, the court determined defendant violated the terms of his parole by having knowing access to ammunition.

On appeal, defendant maintains there was insufficient evidence to show he had knowing access to ammunition. Thus, he contends the court erred and reversal is required. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

*The People's Evidence*

On July 3, 2013, police served a search warrant at a residence on Kings Avenue for possible methamphetamine sales. Defendant was sitting in the living room when officers entered the home. No one else was present.

During the search, a large digital scale containing a residue believed to be methamphetamine was located on top of the microwave in the kitchen. Additionally, two shotgun rounds were found in a kitchen cupboard. One was a slug and the other was bird shot. The shells could be observed immediately once the cupboard door was opened. The cupboard stood at about five and a half feet in height.

Mariano, the suspect associated with the search warrant, was detained by way of a traffic stop prior to his arrival at the home during the execution of the warrant. He was carrying a replica handgun.

---

[1]Because Mariano Arredondo shares the same last name with another witness, we will refer to them by their first names. No disrespect is intended.

On the date in question, defendant was on parole. As a basic condition of parole, defendant was not to have access to firearms or ammunition. Prior to this incident, defendant's parole officer had no reason to violate him. During the course of defendant's supervision, including four to five short conversations during home visits, defendant appeared comfortable asking for assistance. On one occasion, defendant expressed concern to his parole officer about the presence of gang members in the apartment complex parking lot. Defendant never asked for assistance regarding any conduct or behavior of his son, nor did he seek any assistance regarding a change of residence.

***The Defense Evidence***

Defendant's grandson Axel Arredondo testified that during the period he lived on Kings Avenue with his grandfather and his uncle Mariano, he never saw defendant "with any ammunition," nor did defendant have a gun. Axel did see ammunition in the "top cabinet" in the kitchen. Specifically, he saw shotgun shells and bullets for a pistol. Axel indicated his uncle had guns in the house. He was afraid of his uncle and had been threatened by him. Axel never told anyone about the ammunition.

Lorenza Briones, who had raised Mariano from the age of 15 into adulthood, testified Mariano possessed ammunition while living at the house on Kings Avenue. Additionally, she had seen him in possession of drugs, and she feared him.

Defendant's granddaughter Anna Armenta testified she last saw her grandfather "years ago, lots of years ago." She also testified Mariano is her uncle and she fears him because he has guns and had recently threatened her.

Defendant testified in his own defense. He denied being aware of any ammunition in the home. On cross-examination, defendant indicated he had lived at the home on Kings Avenue for about two years. He spent most every day there as he was not employed. He testified that food was stored in the refrigerator, rather than the cabinets. Defendant acknowledged cooking, cleaning, and using the kitchen, including the microwave.

*The Subsequent Proceedings*

A petition for revocation of parole was filed in July 2013. It alleged defendant had violated his parole, following an out-of-state conviction, by having access to ammunition in violation of Penal Code section 30305, subdivision (a)(1).[2] On July 15, 2013, defendant entered a denial to the petition.

A parole revocation proceeding commenced on August 26, 2013, and concluded on September 23, 2013. The court found defendant had violated the terms of his parole by his knowledge of and access to ammunition belonging to his son. This appeal followed.[3]

## DISCUSSION

*Sufficiency of the Evidence*

Defendant contends the evidence is insufficient to support the court's finding that he had knowing access to the ammunition. He maintains that although the court correctly implied such access must involve actual knowledge rather than mere access, the evidence deduced offered no reasonable inference he had knowing access to the ammunition. We do not agree.

In *Morrissey v. Brewer* (1972) 408 U.S. 471, the United States Supreme Court held that a parolee is not entitled to the full panoply of due process rights, because parole revocation is not part of a criminal prosecution and because revocation deprives a parolee of conditional liberty, not absolute liberty; nevertheless, the high court held that a parolee

---

[2]"No person prohibited from owning or possessing a firearm under Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9 of this title, or Section 8100 or 8103 of the Welfare and Institutions Code, shall own, possess, or have under custody or control, any ammunition or reloaded ammunition."

[3]We agree with defendant that a court's parole revocation order pursuant to Penal Code section 3000.08, similar to a probation revocation order, is a postjudgment order affecting the substantial rights of a defendant and therefore is appealable pursuant to section 1237, subdivision (b). (See *People v. Ramirez* (2008) 159 Cal.App.4th 1412, 1421 [order modifying terms of probation is appealable because it affects the substantial rights of defendant].)

who has been detained for a parole violation is entitled to an informal probable cause hearing and a final revocation hearing. (*Id*. at pp. 480, 485, 487.)

The standard of proof required at a parole revocation hearing is a preponderance of the evidence. (*People v. Rodriguez* (1990) 51 Cal.3d 437, 447.) We review for substantial evidence. (*People v. Superior Court* (*Jones*) (1998) 18 Cal.4th 667, 681.)

The condition of parole at issue here states:

"You shall not own, use, have access to, or have under your control: (a) any type of firearm or instrument or device which a reasonable person would believe to be capable of being used as a firearm or any ammunition which could be used in a firearm …."

Following the testimony given at the parole revocation hearings, and the argument by counsel for the People and defendant, the court ruled as follows:

"THE COURT: All right. Well, it's real clear to me that the ammunition was not the defendant's. But I find by more than a preponderance of the evidence that based upon the circumstantial evidence and especially the testimony of Officer Hunter and the defendant's grandson that *the defendant knew the ammunition was there*. And, therefore, I—more than a preponderance of the evidence the Court finds that *even though he did not own or possess it*, *he had access to it* …. [¶] … [¶]

"… I will find that by more than a preponderance of the evidence that the defendant was technically in violation of his parole and that he allowed himself to be in a situation where he could have access to ammunition." (Italics added.)

Assuming, as the trial court did, knowing access to the ammunition was required, we find the court's determination to be supported by substantial evidence.

The People's evidence established that two shotgun shells were located in a kitchen cabinet during a search of the home defendant shared with his son for over two years. The shells were immediately visible once the door to the cupboard or cabinet was opened. Defendant's evidence established his grandson had observed ammunition in a kitchen cabinet during the period he had resided with his grandfather and uncle. The ammunition Axel observed included bullets for a handgun. Thus, different types of

ammunition were present during defendant's two-year stay. Moreover, there was evidence defendant's grandson saw his uncle, defendant's son, carrying firearms in the home. Another individual indicated defendant's son was known to keep ammunition in the home while living on Kings Avenue. Further, defendant testified he spent his days at the home, doing his own cooking and cleaning. These facts taken together, and the reasonable inferences drawn from them, establish both that defendant had knowledge of and access to his son's ammunition.

And while defendant had previously expressed concern regarding the presence of gang members in the apartment complex parking lot,[4] he never requested assistance from his parole officer regarding any conduct by his son that placed his own parole in jeopardy. Neither did he inquire into nor seek assistance regarding a change of residence. From this one can infer defendant was aware of the relevant conditions of his parole, but was reluctant or had no wish to draw attention to his son's illegal behavior by complaining about that behavior. One might also infer defendant was complicit in his son's illegal conduct.

In any event, it is and was reasonable to infer from this evidence, despite his direct testimony to the contrary, that defendant had knowing access to the ammunition stored in the kitchen cabinet or cupboard. (*People v. Rodriguez, supra,* 51 Cal.3d at p. 447; *People v. Superior Court (Jones), supra,* 18 Cal.4th at p. 681.) The fact the cabinet was closed at the time of the search, and that its contents included "nothing of importance just like junk, stuff stacked in there," does not change our conclusion. As a result, we find the trial court's determination to be supported by sufficient evidence.

---

[4]Defendant's parole terms also included the following conditions: "58. You shall not contact or associate with any person you know or reasonably should know to be a member or associate of a prison gang, disruptive group, or street gang" and "62. You shall not be within 100 yards of _____, a known place of gang activity, loitering (delaying, lingering, or idling abut), or congregating."

**DISPOSITION**

The judgment is affirmed.

                           _____

                                              PEÑA, J.

WE CONCUR:


_____

CORNELL, Acting P.J.


_____

FRANSON, J.