Filed 5/17/23  P. v. Renteria CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, <br><br>     Plaintiff and Respondent, <br><br>     v. <br><br> LUIS RENTERIA, <br><br>     Defendant and Appellant. | B316446 <br><br> (Los Angeles County <br> Super. Ct. No. 1PH00766) |

    APPEAL from an order of the Superior Court of Los Angeles County, Robert M. Kawahara, Temporary Judge (Pursuant to Cal. Const. art. VI, § 21).  Affirmed.

    Jason M. Howell, under appointment by the Court of Appeal, for Defendant and Appellant.

    Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Zee Rodriguez, Supervising Deputy Attorney General, John Yang, Deputy Attorney General, for Plaintiff and Respondent.

The superior court revoked Luis Renteria's parole following an evidentiary hearing, finding by a preponderance of the evidence that Renteria had violated its terms and conditions by committing a simple battery on Yennifer D., a developmentally challenged 25-year-old woman living next door to the halfway house where Renteria was residing. On appeal Renteria contends the evidence he touched Yennifer's hair and shoulder was insufficient to establish a battery. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Renteria was paroled in November 2019 after serving more than 29 years of an indeterminate 16-year-to-life state prison sentence for second degree murder and conspiracy to commit murder. On February 1, 2021 Renteria was a resident at a transitional living facility on East 64th Street in Los Angeles. Next door to the facility was the private residence of Silvia Bello Ojeda (Bello), who lived there with her husband, children, sister-in-law Yennifer and mother-in-law, Manuela Garza.

On February 8, 2021 the California Department of Corrections and Rehabilitation (CDCR) filed a petition to revoke Renteria's parole, alleging Renteria had committed a sexual battery on Yennifer. Renteria's parole was preliminarily revoked the following day. The petition was amended over Renteria's objection on October 4, 2021 to allege a simple battery (Pen. Code, § 242).

Bello provided the only testimony at the parole revocation hearing describing Renteria's interaction with Yennifer on the morning of February 1, 2021. Bello was in the yard outside her home where her five-year-old son was playing when Renteria, on the other side of a wrought iron fence, spoke to her, telling her she was pretty, and then shook her hand. Bello responded that

she was married and told Renteria he should not be speaking to her in that manner.  After Bello said she was going to tell her husband, Renteria became rude; and Bello went inside her house.  Her son moved to the other side of the yard to play.

About five minutes after Bello went inside the house, she heard Yennifer outside talking to Renteria.  Bello returned to the yard and saw Yennifer sitting on the 18-inch high ledge that ran alongside the fence.  Yennifer was facing Bello's yard with her back against the fence.  Renteria was standing very close to Yennifer on the other side of the fence with his body touching the bars of the fence.

According to Bello, Yennifer was touching her own hair, as she often did; and Renteria "was like sniffing, smelling like he wanted to have her close."  As Bello got closer to Yennifer, she saw Renteria move "like he was attempting to touch [Yennifer's] hair, but he wasn't—like wasn't able to grab onto her hair.  But not pulling or tugging at her hair, you know, like touching her hair a little bit."  The prosecutor asked, "So he touched her hair a little bit?"  Bello responded, "And when he touched it, he also touched her shoulder a little bit."[1]

Seeing this interaction, Bello said to Yennifer, "'Get inside. I don't want you out here.'"  When Bello told Yennifer to go back inside the house, Renteria "grabbed her shoulder and said, 'Don't leave, don't go.'"  As he did, Yennifer moved her shoulder away from him.

---

[1]     A moment later during her direct testimony, Bello repeated, "When I walked toward them, he grabbed her hair a little bit and touched her shoulder slightly."

The court asked Bello to demonstrate how Renteria grabbed Yennifer's shoulder.  Defense counsel described Bello's actions for the record:  "She is taking her left forearm and putting her right hand—open hand, spread fingers, and wraps it around her fore[arm] and then closed her fingers onto her fore[arm]."  The court clarified, "And the forearm is described as being the shoulder of her sister-in-law."

After Bello told Yennifer to go inside, Renteria spoke to Bello, insisting she allow Yennifer to remain; but he did not keep his hand on Yennifer's shoulder and did not attempt to hold her back or keep her from leaving.  Bello replied, "'I'm taking care of her.  I'm in charge of her.  And if I tell her to go inside, she needs to go inside.'"  Yennifer followed Bello toward the house; and, as she did, Renteria yelled at her to stay.

Once inside the house Yennifer sat in the living room and, according to Bello, "seemed sad."  Bello believed "it was because of something that had happened with her father in Mexico.  And I thought maybe she was feeling something because of something—because of what happened over there."

Yennifer's mother testified that she returned home around 2:00 p.m. on the day of the incident.  Yennifer appeared to be "frightened, and she was quiet."  The court asked, "But you don't know why she was frightened or quiet?"  Garza responded, "Until Silvia Bello told me."  After the incident Yennifer began sleeping a lot and wetting herself, which had not happened previously.

Garza also testified Yennifer had been diagnosed with "mental retardation," had the mental capacity of a four-year-old child, and could not speak in any form of sentence.  According to her mother, Yennifer laughs sometimes when she is nervous, but also if she is happy.

4

Los Angeles Police Officer Christina Oka testified that she and her partner, responding to a radio call, went to the East 64th Street residence in the late afternoon of February 1, 2021 where they first met with Bello, who generally described Renteria's contact with Yennifer.[2] The officers asked that Yennifer, who had gone out with her mother, be brought home. When Yennifer and Garza returned to the residence, the officers questioned Yennifer about what had happened. Although portions of that interview, including Officer Oka's description of Yennifer's gestures that suggested Renteria had groped her breasts, were ruled inadmissible, the court allowed Officer Oka's testimony that Yennifer was laughing at some point during their conversation.

In Renteria's defense, one of his counsel's investigators testified that Bello stated several times during a telephone interview that she did not see Renteria touch Yennifer.

After hearing the evidence, the court found that Renteria had committed a simple battery in violation of the conditions of his parole and remanded him to the custody of the CDCR. Explaining its ruling, the court stated it credited Bello's testimony describing her observations of Renteria's conduct and Yennifer's reaction to it. The court found a touching had occurred, "that Mr. Renteria did have his hands on her." With respect to the offensive nature of the contact, the court emphasized that Yennifer was "clearly, as the court observed[3] and heard testimony, she's significantly developmentally

---

[2] Bello's husband translated for the officers.

[3] The parties stipulated the court could view Officer Oka's body cam video of her interview with Yennifer.

5

disabled." Continuing, the court found, "It's reasonable that Mr. Renteria was aware that she had [a] significant mental disability—actually, developmental disabilities, and that placed her in a very vulnerable place. . . . I think this is one of [these] situations where he took advantage of a very vulnerable person." The court then found the touching was "sexual in nature," although not necessarily for sexual gratification at that time, but something like "'to get to know you better because you're a woman.'"

Renteria filed a timely notice of appeal.

## DISCUSSION

1. *Burden of Proof and Standard of Review*

"Parole revocation determinations shall be based upon a preponderance of evidence admitted at hearings including documentary evidence, direct testimony, or hearsay evidence offered by parole agents, peace officers, or a victim." (Pen. Code, § 3044, subd. (a)(5); see *In re Miller* (2006) 145 Cal.App.4th 1228, 1234-1235; see also *People v. Rodriguez* (1990) 51 Cal.3d 437, 441-442, 446-447 [preponderance of the evidence standard applies at a probation revocation hearing; "[p]arole and probation revocation hearings are equivalent in terms of the requirements of due process"].)

We review a decision to revoke parole for substantial evidence (see *People v. Butcher* (2016) 247 Cal.App.4th 310, 318; *People v. Kurey* (2001) 88 Cal.App.4th 840, 848)—that is, evidence that is reasonable, credible and of solid value. (See *People v. Navarro* (2021) 12 Cal.5th 285, 302.) In doing so, we accord great deference to the superior court's ruling, presuming in support of its order the existence of every fact the court could reasonably deduce from the evidence and resolving neither

6

credibility issues nor evidentiary conflicts.  "'When a trial court's factual determination is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether, *on the entire record*, there is substantial evidence, contradicted or uncontradicted, which will support the determination.'" (*People v. Superior Court* (*Jones*) (1998) 18 Cal.4th 667, 681; accord, *People v. Penunuri* (2018) 5 Cal.5th 126, 142; *People v. Zamudio* (2008) 43 Cal.4th 327, 357; see *People v. Urke* (2011) 197 Cal.App.4th 766, 773.)

### 2.  *Simple (Misdemeanor) Battery*

"A battery is any willful and unlawful use of force or violence upon the person of another." (Pen. Code, § 242.)  "The slightest degree of touching is sufficient." (*In re B.L.* (2015) 239 Cal.App.4th 1491, 1495; accord, *People v. Myers* (1998) 61 Cal.App.4th 328, 335.)  "'Any harmful or offensive touching constitutes an unlawful use of force or violence' under this statute.  [Citation.]  'It has long been established that "the least touching" may constitute battery.  In other words, force against the person is enough; it need not be violent or severe, it need not cause bodily harm or even pain, and it need not leave a mark.'" (*People v. Shockley* (2013) 58 Cal.4th 400, 404.)

### 3.  *Substantial Evidence Supports the Finding That Renteria Committed a Battery*

Renteria does not dispute that he intentionally touched Yennifer, but contends the evidence at the revocation hearing was insufficient for the court to find his touching was "offensive"

and thus constituted a battery.[4]  In support of his argument Renteria challenges the court's assessment that the touching was sexual in nature, its equating of Yennifer's limited cognitive capabilities to the vulnerability of young children and its citation in that regard to two cases that involved substantial acts of sexual abuse.[5]

Whether or not a wholly innocuous interpretation of Renteria's conduct is plausible, it was reasonable for the superior court to infer that, after flirting with Bello, Renteria's smelling and then touching Yennifer's hair was at least tinged with sexual undertones.  And it was equally reasonable to infer that Yennifer, with her back to Renteria and extremely limited cognitive abilities, did not consent to that offensive touching, however slight it may have been.  (Cf. *People v. Dealba* (2015) 242 Cal.App.4th 1142, 1149 ["'[o]nly a slight unprivileged

---

[4]  Renteria does not contend the superior court abused its discretion in revoking parole after finding he had violated the conditions of his supervision by committing a crime.  (See *People v. Butcher*, *supra*, 247 Cal.App.4th at p. 318 [we review the superior court's decision to revoke probation or parole for an abuse of discretion].)

[5]  Analogizing Yennifer's limited cognitive capability to the defenselessness of young children, the superior court cited *People v. Thomas* (2007) 146 Cal.App.4th 1278, overruled in part by *People v. Shockley*, *supra*, 58 Cal.4th at page 406, which involved the commission of lewd acts as well as battery, and a decision from Division One of this court, depublished by the Supreme Court, involving rape and the continuous sexual abuse of several minors.

touching is needed to satisfy the force requirement of a criminal battery'"].)

In any event, a finding of misdemeanor battery does not require proof that the touching was sexually motivated. (See *People v. Shockley*, *supra*, 58 Cal.4th at p. 405 ["[o]ne can easily commit battery without also committing lewd conduct"].) And, of course, we review the superior court's ruling, not its reasoning, and may uphold it on any basis presented by the record. (See, e.g., *People v. Camacho* (2022) 14 Cal.5th 77, 123 ["we review the trial court's ruling, 'not the court's reasoning and, if the ruling was correct on any ground, we affirm'"]; *People v. Zapien* (1993) 4 Cal.4th 929, 976 ["'"No rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion'"'"].)

Here, even if slightly touching Yennifer's hair did not constitute battery, when Bello told her sister-in-law to go inside, Renteria grabbed Yennifer's shoulder and implored her to remain outside with him. In response, Yennifer moved her shoulder slightly away, indicating the touching was unwanted. Thereafter, Yennifer displayed numerous signs that the incident upset her, as described by Bello and Garza. Renteria's actions and Yennifer's responses provided sufficient evidence to support the superior court's finding of an unprivileged and offensive touching.

## DISPOSITION

The order revoking parole and remanding Renteria to the custody of the CDCR is affirmed.


                              PERLUSS, P. J.

We concur:



    SEGAL, J.



    FEUER, J.