Filed 2/13/25  In re A.G. CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re A.G., a Person Coming Under the Juvenile Court Law. | C100114 |
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>A.G.,<br><br>Defendant and Appellant. | (Super. Ct. No. JJC-JV-DE-2022-0000839) |

The juvenile court transferred minor A.G. to criminal court after a hearing pursuant to Welfare and Institutions Code[1] section 707.  On appeal, minor contends the juvenile court's order transferring him to criminal court lacks substantial evidence and

---

[1]    Further undesignated section references are to the Welfare and Institutions Code.

1

constitutes an abuse of discretion and that a recent change in the law entitles him to a new hearing.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Minor is accused of murder committed during a carjacking, as well as possession of a firearm and a controlled substance for sale.  Home surveillance cameras caught the offenses on video.  The videos show two people leave minor's car that was parked around the corner, walk towards the victim's house, and settle in the yard next door.  When the victim walked out of his house and got in his car parked on the street, the two people ran towards the victim.  They opened the victim's car door, pulled the victim out of the car, and rifled through his pockets.  Both people left the victim motionless on the street and drove away in the victim's car.  They drove to where they parked minor's car, where one person got out of the victim's car and got into minor's car.  Both cars then drove away together.  During the altercation, the victim was shot in the neck and died from the injury.

Minor's car was later located at minor's house and searched.  Inside, Stockton police officers discovered a digital scale and coin-sized plastic bags.  When searching minor's bedroom, officers found a backpack with a loaded pistol, a firearm magazine, and a plastic bag filled with presumptive cocaine.  Also in minor's room was a key to minor's car.  On top of a nightstand in minor's room, officers found over $1,000 in cash.  DNA discovered on the pistol was consistent with the victim's DNA.

The prosecution requested a hearing to determine whether minor should be transferred to criminal court.  At the hearing on the motion, the prosecution called an expert in forensic neuropsychology to testify about his opinion regarding minor and the factors applicable to transfer hearings.  The expert testified he interviewed minor, as well as read numerous reports regarding minor's social and psychiatric history.  While minor was 19 years old at the time of the expert's interview, he was 17 years old at the time of the alleged offenses.

During the interview, minor reported being exposed to substance use in his family, including an uncle who used substances and suffered from depression. Minor also reported a history of using substances, including cannabis, alcohol, and other pills. Minor also reported struggling with maintaining his attention span, reading, and writing. Throughout the interview, minor did not demonstrate cognitive impairment or intellectual deficits. In fact, the expert found that minor possessed problem solving abilities and was capable of navigating difficult situations, thus was not susceptible to peer pressure. While minor reported attention problems, the expert did not find he showed symptoms consistent with attention deficit hyperactivity disorder or memory issues.

During the interview with minor, the expert administered a standardized personality assessment inventory. The assessment showed minor was experiencing anxiety and depression and was likely experiencing symptoms of trauma. It also showed minor was suspicious of others and had difficulties building relationships and showing insight into his behavior or the need to change his life. After considering minor's records, the interview, and the assessment, the expert diagnosed minor with a personality disorder, depression, and trauma, as well as a substance use disorder that was in remission because minor had stopped using substances while in confinement.

Looking at the facts of minor's alleged offenses, the expert testified that minor demonstrated sophistication in his ability to plan and execute the crimes. Minor told the expert he was at a birthday party the day of the offenses and had taken a few sips of alcohol but felt sober. Minor said it was someone else's idea and he wished he had not gone.

The expert believed minor could not be rehabilitated prior to the expiration of juvenile jurisdiction given his personality disorder, which takes longer to treat than depression, trauma, and anxiety. The expert based his opinion on minor's history of aggression and lack of insight. This included minor's involvement in fights while in juvenile confinement that were unrelated to him personally. When speaking of these

3

fights, minor did not demonstrate remorse or regret. Minor also reported to the expert that slight adversity both before and after his arrest made him angry, and that he responded by breaking things, including a television on one occasion prior to his arrest. The expert also based his opinion on minor's elevated suspiciousness and paranoia, which typically results in individuals having difficulties creating relationships and trusting people. For instance, minor believed jail staff was targeting him and limiting his phone time. Minor also reported difficulties following authority and rules both before and after his arrest.

While minor reported positive personality traits that pointed to rehabilitation, such as caring for his siblings and having a motivation to learn, he also demonstrated difficulty taking responsibility, which is the first step in behavioral health treatment to address a personality disorder. In the expert's opinion, minor's untrusting personality style is not conducive to rehabilitation because trust is needed to assist in building a therapeutic relationship. Minor further demonstrated difficulty understanding and identifying his own emotions. And minor did not appear concerned about his conduct or his legal proceedings, nor did minor demonstrate remorse for his offenses.

Also, the expert believed minor's school history demonstrated his behaviors were ingrained in his personality. For example, minor's school records showed he had a history of truancy, threatening behavior, and substance use, and he was also expelled from school when school services were determined insufficient at correcting his behaviors. Minor's school records from 2019 showed he often disrupted the instructional process and was thought to be a danger to persons or property. School records also showed he was expelled in 2022 for possession of ammunition and drugs while at school.

If minor were to stay in juvenile confinement, he would be there for six years before being released at age 25. The expert believed minor's depression and anxiety could be successfully treated during juvenile jurisdiction, but his personality disorder

4

required longer than seven years. As opposed to depression and anxiety, personality disorders generally remain with individuals throughout their lives.

Minor had no prior convictions but had 11 documented disturbances while in confinement following his arrest for the charged offenses. These disturbances included four instances of fighting and one instance of calling a staff member an inappropriate name, as well as other minor rule violations. While confined, minor attended some classes designed to help him regulate his emotions and thinking ability. Minor also received a high school diploma. Minor did not appear to think he needed additional services, but said he valued having someone to talk to.

The San Joaquin County Probation Department offers several classes to individuals held in juvenile confinement. These classes include Secure Track, which consists of a four-phase program. Phase one acts as an introduction, while phase two focuses on social skills and problem solving, and phase three provides techniques to manage anger or substance abuse issues and social skills. The anger management course is a five-week program designed to give individuals skills to recognize anger triggers and successfully cope with them. Phase four supplies tools for success planning, i.e., managing internal responses to achieve better outcomes. To properly evaluate a youth in juvenile confinement and provide the best care, the youth must be honest and transparent. Secure Track as well as art classes are required programs offered to minors in confinement.

While in juvenile confinement, youths have the ability to attend community college or vocational training as a cook. Mental health and behavioral health services are also offered on a voluntary basis. The probation office also offers classes in computer programing, large equipment operation, and firefighter training, all of which are voluntary programs.

The expert believed these programs were insufficient to meet minor's needs because they do not tailor themselves to minor's personality disorder and they are short in

5

duration when minor needs more active and prolonged support. In the expert's opinion, appropriate treatment would include individual and long-term intensive psychotherapy.

The juvenile court granted the prosecution's motion to transfer minor's case to adult court. Before doing so, the juvenile court recited the applicable law and the items of evidence it considered, which included all the testimony given and reports filed in minor's case. The juvenile court then recited the individual factors to consider and analyzed the facts under each factor. It found minor exhibited a high degree of criminal sophistication, the circumstances of his crime were violent and serious, and he needed more intensive care than the juvenile court could provide, all factors weighing in favor of transferring minor to criminal court. It further found minor's prior criminal conduct and behavior while in confinement weighed against transferring him to criminal court. Weighing the factors, the juvenile court found the prosecution met its burden by clear and convincing evidence that minor should be transferred to criminal court.

Minor appeals.

DISCUSSION

Section 707 provides the only method for the prosecution to try a juvenile offender in criminal court. To transfer a minor under this section, the prosecution must show "by clear and convincing evidence that the minor is not amenable to rehabilitation while under the jurisdiction of the juvenile court." (§ 707, subd. (a)(3).) The statute sets out five criteria that juvenile courts must consider in making this determination. These are "[t]he degree of criminal sophistication exhibited by the minor" (§ 707, subd. (a)(3)(A)(i)); "[w]hether the minor can be rehabilitated prior to the expiration of the juvenile court's jurisdiction" (§ 707, subd. (a)(3)(B)(i)); "[t]he minor's previous delinquent history" (§ 707, subd. (a)(3)(C)(i)); the "[s]uccess of previous attempts by the juvenile court to rehabilitate the minor" (§ 707, subd. (a)(3)(D)(i)); and "[t]he circumstances and gravity of the offense alleged in the petition to have been committed by the minor" (§ 707, subd. (a)(3)(E)(i)).

6

The juvenile court does not consider these factors in isolation.  Instead, the statute "requires the juvenile court to consider all five factors together in determining whether the minor is amenable to rehabilitation."  (*In re E.P.* (2023) 89 Cal.App.5th 409, 417.)  Nor does the statute dictate the importance of one factor over another:  "[T]he court has the discretion to conclude that one or more of the five factors predominate so as to determine the result, even though some or all of the other factors might point to a different result."  (*Ibid.*)

Each of the five factors in turn includes instructions for the court to follow when evaluating that factor.  Following the conclusion of minor's transfer hearing in October 2023, the instructions following each factor changed.  (§ 707, subd. (a)(3)(A)(ii), (B)(ii), (C)(ii), (D)(ii), (E)(ii); Stats. 2023, ch.716, § 1.)  At the time of the hearing, they stated that "the juvenile court *may* give weight to any relevant factor."  (Former § 707, subd. (a)(3)(A)(ii), italics added; accord, former § 707, subd. (a)(3)(B)(ii), (C)(ii), (D)(ii), (E)(ii); see Stats. 2023, ch.716, § 1.)  Effective January 1, 2024, Senate Bill No. 545 (2023-2024 Reg. Sess.) (Senate Bill 545) amended the statute to change *may* to *shall*, thereby "mak[ing] consideration of any relevant factor mandatory."  (Legis. Counsel's Dig., Sen. Bill 545 (2023-2024 Reg. Sess.) Stats. 2023, ch. 716; see *In re Miguel R.* (2024) 100 Cal.App.5th 152, 164-165 (*Miguel R.*).)

I

*The Court Did Not Err By Ordering Minor Transferred To Criminal Court*

Minor contends insufficient evidence supports the juvenile court's findings when transferring him to criminal court and thus its order constitutes an abuse of discretion.  Specifically as it pertains to his sufficiency of the evidence argument, minor points to the juvenile court's findings regarding criminal sophistication, amenability to rehabilitation, and circumstances of the crime as lacking support.  We disagree on all points.

We review a juvenile court's decision whether to transfer a minor to criminal court for abuse of discretion.  (*People v. Superior Court* (*Jones*) (1998) 18 Cal.4th 667, 680;

7

*Miguel R.*, *supra*, 100 Cal.App.5th at p. 165.) Under this standard, "[t]he court's factual findings are reviewed for substantial evidence, and its legal conclusions are reviewed de novo." (*Kevin P. v. Superior Court* (2020) 57 Cal.App.5th 173, 187.) "Because the juvenile court must make [the transfer] finding by clear and convincing evidence, we 'determine whether the record, viewed as a whole, contains substantial evidence from which a reasonable trier of fact could have made the finding of high probability demanded by' the clear and convincing evidence standard." (*Miguel R.*, at p. 165.)

A

*Substantial Evidence Supports The Finding*

*Minor Acted With Criminal Sophistication*

Section 707, subdivision (a)(3)(A)(i) requires the juvenile court to consider the "degree of criminal sophistication exhibited by the minor." Subdivision (a)(3)(A)(ii) instructs juvenile courts to consider "the minor's age, maturity, intellectual capacity, and physical, mental, and emotional health at the time of the alleged offense; the minor's impetuosity or failure to appreciate risks and consequences of criminal behavior; the effect of familial, adult, or peer pressure on the minor's actions; the effect of the minor's family and community environment; the existence of childhood trauma; the minor's involvement in the child welfare or foster care system; and the status of the minor as a victim of human trafficking, sexual abuse, or sexual battery on the minor's criminal sophistication."

Minor contends the juvenile court erred by assuming minor was an active participant in the carjacking and shooting when the evidence was uncertain as to his level of involvement and could have supported a conclusion defendant was merely a getaway driver. Minor faults the court for not assuming an adult participated in the charged crimes.

Minor's contention is true that the level of his involvement is uncertain. The surveillance footage captured two individuals, not necessarily minor, and it cannot be

8

disproved that minor waited in the car while the two individuals carjacked and murdered the victim. Our role, however, is not to reweigh the evidence (*People v. Lindberg* (2008) 45 Cal.4th 1, 27), and, as minor concedes, the juvenile court must assume he committed the charged offenses for purposes of the transfer hearing analysis (*People v. Superior Court* (*Jones*), *supra*, 18 Cal.4th at p. 682). Reviewing the record as a whole, as we must (*Miguel R.*, *supra*, 100 Cal.App.5th at p. 165), the evidence supplied clear and convincing evidence minor had an active role in the carjacking and murder. Minor was the registered owner of the car used to go to and flee from the scene of the crime and the gun used in the murder was found in a backpack in a room with minor's indicia of ownership. Taken together, sufficient evidence supported the juvenile court's finding minor had an active role in the carjacking and murder beyond being a getaway driver given his supplying and retaining of vital tools to commit the crimes.

In a related argument, minor compares his case to *Kevin P.* to support the proposition he did not exhibit a heightened level of sophistication like the minor in *Kevin P.* who spent a considerable amount of time attempting to dispose of the victim's body. (*Kevin P. v. Superior Court*, *supra*, 57 Cal.App.5th at pp. 193-194.) While the sophistication demonstrated in *Kevin P.* may be more egregious than here, comparison with other cases "is of limited utility" in deciding issues of sufficiency of evidence because "each case necessarily depends on its own facts." (*People v. Thomas* (1992) 2 Cal.4th 489, 516.) Here, the evidence supports by clear and convincing evidence the reasonable inference that minor planned the criminal offenses with at least one or two other people, used his car to drive to the victim's house, and parked out of sight. Given minor's prominent role in supplying his car and retaining the murder weapon, it is also a reasonable inference that minor was one of the two people who waited (either with a gun or with an accomplice who was armed) until the victim was in a vulnerable position. Minor and his accomplice then ambushed the victim with the intent to inflict physical violence, took the victim's car, and fled from the scene. As minor admits, this was not a

9

crime of opportunity but one that required an element of planning and coordination, even if the murder could be seen as unintended. As a result, substantial evidence supports the juvenile court's finding minor exhibited criminal sophistication in the execution of the offenses.

B

*Substantial Evidence Supports The Finding Minor Would*

*Not Be Rehabilitated Prior To Expiration Of Juvenile Jurisdiction*

Section 707, subdivision (a)(3)(B)(i) instructs juvenile courts to consider "[w]hether the minor can be rehabilitated prior to the expiration of the juvenile court's jurisdiction." This language closely mirrors the ultimate question in a transfer hearing, that is, whether "the minor is . . . amenable to rehabilitation while under the jurisdiction of the juvenile court." (§ 707, subd. (a)(3).)

Minor contends the juvenile court and the expert never considered who minor would be at the end of juvenile jurisdiction in six years. To minor, the evidence indicates he would not be a threat to the public because this is his first offense and he is expected to mature over the course of the next six years. Minor's argument reweighs the factors and is properly addressed under the abuse of discretion analysis below. (*People v. Superior Court* (*Jones*), *supra*, 18 Cal.4th at p. 680; *Miguel R.*, *supra*, 100 Cal.App.5th at p. 165.)

As to the sufficiency of the evidence concerning minor's expected rehabilitation, the juvenile court pointed to the limited services offered by the county, minor's ingrained personality disorder and its affects, and the estimated term of treatment. Reasonable and credible evidence supporting this rationale was supplied by the expert and probation officers. They testified that (1) county services were limited to short-term classes and voluntary behavioral health programs, (2) minor's rule breaking had become part of his personality as demonstrated by his long term disregard for rules and lack of regret or concern about the consequences of his actions, and (3) because minor could not build

trusting relationships, it would take him longer than seven years to confront and resolve his personality disorder. Thus, the juvenile court was permitted to adopt this testimony as more probative than the considerations raised by minor on appeal. (*People v. Barnwell* (2007) 41 Cal.4th 1038, 1052 ["Even when there is a significant amount of countervailing evidence, the testimony of a single witness that satisfies the standard is sufficient to uphold the finding"].) Further, the juvenile court considered minor's potential to grow and mature as required by section 707, subdivision (a)(3)(B)(ii) when it considered minor's age, length of treatment under juvenile jurisdiction, and positive personality traits, such as his motivation to learn. Accordingly, sufficient evidence supports the juvenile court's finding the prosecution met its burden by clear and convincing evidence.

C

*Substantial Evidence Supports The Finding The Offenses Were Grave*

Section 707, subdivision (a)(3)(E)(i) instructs juvenile courts to consider the circumstances and gravity of the crime charged. Subdivision (a)(3)(E)(ii) requires the court to weigh "the actual behavior of the person, the mental state of the person, the person's degree of involvement in the crime, the level of harm actually caused by the person, and the person's mental and emotional development."

Minor advances the same argument he advanced in his argument against finding sufficient evidence he exhibited criminal sophistication, in that his role in the crimes was uncertain. For the same reasons we rejected that argument, we reject this one—evidence was presented to demonstrate minor had a more active role in the crime than being a getaway driver. Indeed, minor and his accomplices used minor's car to go to and flee from the scene of the crime and minor possessed the gun used in the murder after the crimes were committed. Accordingly, substantial evidence supports the juvenile court's finding the prosecution met its burden by clear and convincing evidence that minor committed serious and grave offenses.

11

# D

## *The Court Did Not Abuse Its Discretion*

Minor argues that because insufficient evidence supports various findings by the juvenile court, its order of transfer constitutes an abuse of discretion. As we have determined, substantial evidence supports the juvenile court's factual findings under the relevant factors, and thus reject minor's claim.

Minor further argues that, weighing the factors, it is clear he would be amenable to rehabilitation given his uncertain role in the crime, expected maturity over the course of six years, participation in classes while in juvenile confinement, and lack of prior criminality. To demonstrate an abuse of discretion, minor must make " ' "a showing the [juvenile] court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." ' " (*Pilliod v. Monsanto Co.* (2021) 67 Cal.App.5th 591, 630.)

Here, the juvenile court weighed the considerations minor cites as probative to his rehabilitation. Weighing all these considerations with the other facts presented at the transfer hearing, we cannot say it is unreasonable for the juvenile court to conclude minor should be transferred to criminal court. As described, witnesses testified that juvenile jurisdiction could not provide the type of treatment minor required to resolve his personality disorder. Minor was further unremorseful for his crimes and unconcerned with his legal troubles. While he participated in some classes and achieved a high school diploma while incarcerated, minor also committed a grave offense that required planning and time to reflect before a coordinated retreat. This may have been minor's first criminal offense, but he demonstrated a history of defiance, rule breaking, and threatening behavior that did not stop when he was incarcerated and continued with several instances of fighting and one instance of threatening juvenile justice staff. Given this evidence and the juvenile court's weighing of the factors, minor has not demonstrated an abuse of discretion.

12

II

*Remand Is Not Required In Light Of Senate Bill 545*

Minor's 2023 hearing took place prior to the enactment of Senate Bill 545, which amended section 707 to "make consideration of any relevant factor mandatory." (Stats. 2023, ch. 716.) We agree with the parties that the amendment, by "mak[ing] it more difficult to transfer juveniles from juvenile court, which . . . reduces the possible punishment for juveniles" (*In re S.S.* (2023) 89 Cal.App.5th 1277, 1289), is an ameliorative statute that applies retroactively to minors whose cases were not final when the law became effective (see *ibid.*; *In re J.M.* (2024) 103 Cal.App.5th 745, 753, review granted Sept. 25, 2024, S286259).

Nevertheless, it does not follow that remand is required to allow the juvenile court to conduct a second transfer hearing. Our Supreme Court explained in the context of a change in sentencing law that when an ameliorative statute takes effect after the trial court has made a ruling, " 'the appropriate remedy is to remand for resentencing unless the record "clearly indicate[s]" that the [juvenile] court would have reached the same conclusion "even if it had been aware that it had such discretion." ' " (*People v. Salazar* (2023) 15 Cal.5th 416, 425.) Both sides agree, as do we, that the analysis is the same for the change in law at issue here, and the same standard applies.

Minor contends he is entitled to a new transfer determination because it is unclear whether the juvenile court would make the same decision had it understood its duty to weigh the statutory considerations when making its ruling. We disagree. As minor acknowledges, the juvenile court recited each factor and the relevant considerations before analyzing the facts of minor's case. The juvenile court's oral recitation of its reasons demonstrates the relevant considerations weighed in the court's mind when making its ruling. For example, when determining the level of sophistication exhibited by minor, the juvenile court listed the statutory considerations, including minor's age, maturity, intellectual capacity, physical and emotional health, failure to appreciate risks

13

and consequences of his behavior, and effects of peer pressure. The court then analyzed the circumstances of minor's crime within the context of minor's age, family background, reports of anger management problems, and the expert's assessments and conclusions. The same level of engagement occurred with each factor and the now mandatory considerations. Thus, this is not a basis for remand.

Minor further argues he is entitled to a new transfer determination because Senate Bill 545 added relevant considerations to the transfer analysis. Minor points to the fact the juvenile court must now consider whether he was involved in the child welfare or foster care system or a victim of sexual abuse or trafficking. But the record does not indicate minor was involved in the child welfare system or a victim of sexual abuse or trafficking. Thus, even if considered, this change in the law would have no effect on minor's case. Accordingly, the record clearly indicates the juvenile court would have reached the same conclusion had it been aware of current law.

DISPOSITION

The juvenile court's order transferring minor to a court of criminal jurisdiction is affirmed.

/s/
ROBIE, Acting P. J.

We concur:

/s/
MAURO, J.

/s/
WISEMAN, J.*

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.