Filed 6/25/26  In re G.C. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re G.C., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,        Plaintiff and Respondent,  v.  G.C.,        Defendant and Appellant. | E087518  (Super.Ct.No. DLIN2400150)  OPINION |

APPEAL from the Superior Court of Riverside County.  Emily A. Benjamini, Judge.  Affirmed.

Sheila O'Connor, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene A. Sevidal, Assistant Attorney General, A. Natasha Cortina and Genevieve Herbert, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant G.C., who was born in August 2007 and who has been charged with several criminal offenses committed in August 2024, appeals the granting of the People's Welfare and Institutions Code section 707 petition transferring him from the juvenile court to a court of criminal jurisdiction.[1]  We will affirm.

BACKGROUND

In August 2024, G.C. (then age 17) was at home and had several visitors, including 17-year-old A.U. and 18-year-old Fabian.  G.C., A.U., and Fabian came up with a plan to rob a drug dealer (the victim).  To that end, Fabian created a fake Instagram account to arrange to buy marijuana vape pens from the victim.  G.C. and A.U. were present when Fabian asked to borrow a car from another person who was visiting G.C., telling the car's owner that he was going to get food and pick up a couple of vape pens, adding that he was " 'gonna jack that fool.' "

Later that night, A.U. and Fabio—each armed with a firearm—set out for the victim's home.  Fabian drove the car while G.C. and A.U. hid in the back seat so the victim would not be alarmed to see how many people were in the car.  When they arrived, Fabian messaged the victim.  Fabian started shooting at the victim when he came out of the house, then G.C. and A.U. got out of the car and G.C. joined in the shooting.[2]  When the victim fell to the ground, Fabian, A.U., and G.C. stood over the victim and continued

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise noted.

[2] A.U. tried to participate in the shooting but his gun malfunctioned.

shooting. Then they took the victim's vape pens and drove off. They abandoned the car and Fabian gave the car keys to G.C. The victim died.

Fabian said the victim did not brandish, point, or shoot a firearm.

G.C. was arrested two months later and the People filed a petition in the juvenile court alleging he came within section 602 because he had committed several criminal offenses (the section 602 petition).[3] G.C. was detained. The People also filed a section 707 motion to transfer G.C. to a court of criminal jurisdiction and the juvenile court granted their request for a psychological evaluation of G.C. to be performed by Dr. Gene Berg with the proviso that the doctor was not to address the "underlying incident" with G.C. Dr. Berg's evaluation resulted in a recommendation that G.C. continue to receive services in the juvenile court system.

Ana Gutierrez a Riverside County probation officer with three years' experience as a juvenile investigator prepared a probation report for G.C.'s section 707 hearing. Office Gutierrez set forth information obtained from police reports filed in connection with G.C.'s offense (which included the statements of witnesses Fabian, A.U., and G.C.); Dr. Berg's evaluation; G.C.'s school records; whether G.C. had any gang affiliations; G.C.'s medical, substance abuse, and mental health history; his adjustment to juvenile hall;

---

[3] The charged offenses are all violations of the Penal Code. They are murder (§ 187, subd. (a)) with the special circumstances of killing the victim while lying in wait (§ 190.2, subd. (a)(15)) while he was engaged in the commission of a robbery (§ 190.2, subd. (a)(17)(A)) and by intentionally discharging a firearm (§ 190.2, subd. (a)(21)), count 1; robbery (§ 211), count 2; and unlawful possession of a firearm (§ 29610, count 3); and, an enhancement allegation as to the murder and robbery count that the minor personally and intentionally discharged a firearm and proximately caused the death of another person (§§ 12022.53, subd. (d), 1197.7, subd. (c)(8)).

interviews with G.C. and his mother; and the availability of youth rehabilitation programs for G.C. Officer Gutierrez recommended transfer of G.C. to criminal court.

After hearing the section 707 transfer petition in October 2025, on December 3, 2025, the court issued a written order in December transferring G.C.'s case to criminal court. It dismissed without prejudice the section 602 petition and ordered that G.C. (then 18 years old) continue to be housed in juvenile hall and to appear in criminal court that afternoon for arraignment. G.C. appealed.

DISCUSSION

On appeal, G.C. argues the juvenile court's decision to transfer him to a court of criminal jurisdiction is not supported by sufficient substantial evidence.

A. *The Statutory Backdrop and Standard of Review*

Section 707 provides in relevant part that, when a section 602 petition alleges a minor who is 16 years old or older committed a felony such as murder or robbery, the People may make a motion to transfer the minor from juvenile court to a court of criminal jurisdiction (often referred to as adult court). (§ 707, subds. (a)(1), (b)(1) & (3).) Upon receipt of the motion, the juvenile court is required to order a probation officer to submit a report on the minor's behavioral patterns and social history. (§ 707, subd. (a)(1).)

To prevail on a section 707 motion, the People must establish by clear and convincing evidence that the minor is not amenable to rehabilitation while under the jurisdiction of the juvenile court. (§ 707, subd. (a)(3); *In re Miguel R.* (2024) 100 Cal.App.5th 152, 156 (*Miguel R.*).) In making the amenability determination, the

4

juvenile court is required to consider specific criteria set forth in subdivision (a)(3)(A)-(E) of section 707 (variously referred to herein as the section 707 criteria or factors), to wit, (i) the degree of criminal sophistication exhibited by the minor; (ii) whether the minor can be rehabilitated prior to the expiration of the juvenile court's jurisdiction; (iii) the minor's previous delinquent history; (iv) the success of previous attempts by the juvenile court to rehabilitate the minor; and, (v) the circumstances and gravity of the offense alleged in the petition to have been committed by the minor. The statute also provides a nonexhaustive list of factors relevant to consideration of each of the section 707 criteria. (§ 707, subd. (a)(3)(A)-(E).)

The minor's amenability to rehabilitation is the central and dispositive question in a section 707 proceeding and the juvenile court's analysis of the section 707 criteria must be focused through the lens of that issue (*In re O.F.* (2026) 119 Cal.App.5th 133, 161-162), but the statute does not require that any of the section 707 criteria are to be accorded more weight than the other (*Miguel R., supra*, 100 Cal.App.5th at pp. 156, 166).

We review a juvenile court's ruling on a motion to transfer a minor to criminal court for an abuse of discretion. (*Miguel R., supra*, 100 Cal.App.5th at p. 165.) Because abuse of discretion is not a unified standard and calls for varying degrees of deference according to the aspect of a trial court's ruling being reviewed, " '[t]he trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious.' " (*People v. Cardenas* (2025) 18 Cal.5th 797, 812.)

5

Here, the juvenile court's findings as to each of section 707 criteria are findings of fact are reviewed for substantial evidence. (*Miguel R., supra*, 100 Cal.App.5th at p. 165.) Its ultimate finding that the minor is not amenable to rehabilitation under its jurisdiction is required to be made by clear and convincing evidence and, therefore, we review that finding by examining the record to determine whether, as a whole it contains substantial evidence from which a reasonable trier of fact could have made the finding of high probability demanded by the clear and convincing evidence standard. (*Ibid*.)

B. *The Juvenile Court's Section 707 Criteria Findings in This Case*

Here, the juvenile court's written opinion sets forth in detail the evidence it considered in connection with each of the section 707 criteria. It found the People had not met its burden of establishing that G.C. could not be rehabilitated before the expiration of the juvenile court's jurisdiction (§ 707, subd. (a)(3)(B)(i)), he had no previous history of delinquency (§ 707, subd. (a)(3)(C)(i)), and there had been no previous attempts by the juvenile court to rehabilitate him (§ 707, subd. (a)(3)(D)(i)).

The juvenile court did find, however, that the People had met their burden in establishing (i) that G.C. evidenced criminal sophistication and (ii) the circumstances and gravity of the allegations against G.C. supported his transfer to the criminal (adult) court. (§ 707, subds. (a)(3)(A)(i) & (a)(3)(E)(i), respectively.) The minor claims the court's findings as to those two factors are not supported by substantial evidence.

(a) *The Finding That the Minor Exhibited a Sufficient Degree of Criminal*

*Sophistication to Support a Transfer to Adult Court*

When making a finding as to the degree to which a minor exhibited criminal sophistication, the juvenile court must give weight to any relevant fact, including the minor's age, maturity, intellectual capacity, as well as their physical, mental, and emotional health at the time of the alleged offense; the minor's impetuosity or failure to appreciate risks and consequences of criminal behavior; the effect of familial, adult, or peer pressure on the minor's actions; the effect of the minor's family and community environment; the existence of childhood trauma; the minor's involvement in the child welfare or foster care system; and the status of the minor as a victim of human trafficking, sexual abuse, or sexual battery on the minor criminal sophistication.  (§ 707, subd. (a)(3)(A)(ii).)

Here, ample evidence supports the juvenile court's finding that G.C. demonstrated a sufficient degree of criminal sophistication to support a transfer to criminal court.

(i) *The Criminal Offense*

The court found that 17-year-old G.C. had not acted in a sudden or impulsive way but rather in a planned and violent manner evidencing criminal sophistication when he killed and robbed the victim.  In support of that conclusion, it noted that G.C., Fabian, and A.U. made plans to undertake that crime.  After they identified their intended victim, Fabian set up a fake Instagram account so they could communicate with the victim and arrange to purchase marijuana vape pens from him.  Each of them armed themselves with

loaded firearms and drove to the victim's home together in a car they had borrowed with the intention of robbing the victim of the vape pens and killing him. G.C. and A.U. hid in the back seat so the victim could not see how many people were in the car when Fabian drove up to the victim's home and, when they lured the victim out of his house, they ambushed him. After they shot the victim numerous times, they took the marijuana vape pens (worth $20) and left the scene.

(ii)  *G.C.'s Actions Before and After His Arrest*

Sufficient evidence supports the juvenile court's finding that G.C.'s conduct before and after his arrest for the murder and robbery demonstrated criminal sophistication.

A few days after the murder, G.C. was drinking with Fabian and another friend. Fabian and G.C. asked the friend if he knew what had happened recently and Fabian then pulled out a "Glock" firearm and said it was the one he used to kill the victim. G.C., in what the juvenile court described as an exhibition of a chilling lack of remorse, said, " 'We were trying to get him for a 10 piece and he pulled out a gun, so we shot him. Fuck him.' "

Two months after the murder G.C. was taken into custody and placed in the back seat of a police car where one of the law enforcement officers placed a body-worn camera that recorded a telephone call G.C. made to a family member while waiting in the car. G.C. asked the family member to telephone an unidentified man and put the call on the speaker. G.C. told the man the name of the person he believed had snitched on him and asked the man to "do me a favor and pop him for me."

In addition to the showing of a lack of remorse and making threats, the juvenile court found G.C.'s conduct to be dishonest and manipulative. It noted that he had told both Dr. Berg and Officer Gutierrez that he did not use drugs or alcohol, which was not true. A friend said he went with G.C. and Fabian to G.C.'s house and consumed alcohol, and it was on that occasion when G.C. made the statement about shooting the victim and "[f]uck him." Too, in March 2025, staff at the juvenile hall overheard G.C. tell his father that the medication he had been prescribed was not working because of frequent drug use and that G.C. was going to tell a person named Andres " 'to bring [G.C.] one, to put it in his jacket when he visits [G.C.], … [w]e can get snacks, he can put it in the chocolate so [G.C.] can be high.' "

(iii) *G.C.'s Personal Attributes and Circumstances*

Dr. Berg found, and the juvenile court noted, that G.C.'s intellectual functioning was average, his general judgment and decisionmaking were adequate, and there was no evidence he suffered from any major mental health disorder. G.C. was raised in a stable household consisting of his parents and two younger siblings, he had received support from his family throughout his life and did not report any childhood trauma. The only mental health difficulties G.C. reported were anxiety and depression related to being separated from this family since his arrest and detention.

Dr. Berg found no evidence that G.C. was suffering from any mental, physical, or emotional health issues at the time the offense was committed that may have influenced his actions. The doctor concluded that G.C. is not criminally sophisticated but with the

9

caveat that no information was made available to him relating to G.C.'s behavior during the offenses.

Dr. Berg did not question G.C. about the robbery and murder (there was a court order prohibiting that inquiry), he did not review any of the materials related to that event or address G.C.'s actions taken after the event occurred. Because Dr. Berg was "missing a great deal of information" the juvenile court "heavily discount[ed]" his opinion regarding G.C.'s criminal sophistication.

G.C. argues the evidence is insufficient to support a finding that he acted with criminal sophistication for several reasons: (i) the juvenile court improperly relied solely on the second-hand account of indicted co-participant Fabian to establish the facts of the offense; (ii) Fabian, who was the only adult of the three participants, was the sole organizer of the incident; (iii) there is conflicting evidence with respect to whether the killing was premeditated and whether G.C.'s fired his gun defensively; (iv) none of G.C.'s conduct suggested that he was a sophisticated criminal; and, (v) the juvenile court "punished G.C. for having no mental health conditions and being of normal intelligence." We are not persuaded.

G.C. complains the only basis for concluding he was involved in the planning to rob and kill the victim was the "self-serving" statements of Fabian, the indicted adult who he posits was the unambiguous leader and sole organizer of the plan. G.C. argues the court should have disregarded Fabian's version of events in favor of evidence suggesting G.C. did not know there was a plan to murder the victim and that he only started shooting

10

because the victim pulled out a gun first. His claim fails because the existence of contrary evidence does not establish that juvenile court's findings were not supported by substantial evidence (*Miguel R., supra*, 100 Cal.App.5th at p. 169.)

G.C. also posits that his conduct was not that of a sophisticated criminal but rather that of a hapless follower desperate for attention who was going along with an adult leader. The record supports the trial court's findings that G.C. was not pressured but instead willingly participated in the planning, killing, and robbing of the victim. The participants and their friends were gathered at G.C.'s home before and after the offenses took place. There is very little difference between the participants' ages and no one who was present during the planning stage suggested that G.C. was not on board or had any reservations about executing the plan, and certainly G.C.'s telephone call made while waiting in a police car for the purpose of trying to arrange revenge against a snitch supports the finding that G.C. was a willing participant, not a hapless follower.

G.C. posits that his making that call in the police car "in front of a police officer who was filming" is evidence that he was not a criminal sophisticate but was simply an example of "puffed-up bravado" by an immature teenager trying to act tough. He is mistaken. That call was not made in front of a police officer but rather was captured on a bodycam left in the police car by an officer. It is reasonable to infer the officer placed the bodycam in the car surreptitiously and G.C. was not aware of it. (*Miguel, supra*, 100 Cal.App.5th at p. 169 [reviewing courts draw all reasonable inferences in support of the court's findings, not against them].)

11

Contrary to G.C.'s contention, the court's finding that he had normal intelligence and no mental health conditions is not tantamount to a punishment for having those attributes. Rather, it is simply a finding on a section 707 factor that requires the court to consider whether G.C. suffered from cognitive or mental health problems that might have impacted his decision to participate in the killing and robbery of the victim. (§ 707, subd. (a)(3)(A)(ii).)

In connection with his punishment claim, G.C. asserts that, when the juvenile court found that he is criminally sophisticated, it improperly relied on the circumstances of the offense while ignoring all the science surrounding children's brain development and their inability to make sophisticated choices.

G.C.'s claim that it is improper to consider the circumstances of the offense is based on (i) the fact it is not listed in subdivision (a)(3)(A)(ii) of section 707 as a factor to be considered and, (ii) every transfer motion involves a serious felony and a vast majority of those cases involve planning, use of a firearm, and postoffense statement and, therefore, consideration of those facts amounts to a "per se finding of sophistication." We disagree.

That "circumstances of the offense" is not specifically listed as a factor does not mean it was improper for the juvenile court to consider them. Subdivision (a)(3)(A)(ii) of section 707 authorizes the juvenile court to "give weight to any relevant factor, including, but not limited to" those listed in the subdivision. Moreover, consideration of a minor's impetuosity and appreciation of risks and consequences of criminal behavior

12

(which are specifically mentioned in the subdivision) may well be informed by the minor's planning, firearm use, and statements made after committing the offense as we have seen in this case.

With respect to the assertion that the juvenile court "ignored all the science" concerning children's brain development, we note at the outset that G.C. did not present any materials or argument on the subject at the transfer hearing. Moreover, it appears to us that, on their face, the section 707 criteria are designed to, among other things, suss out a minor's ability to distinguish bad choices from good ones and to weigh consequences of their actions.

(b) *The Finding That the Circumstances and Gravity of the Offense Alleged in the Petition Supports a Transfer to Adult Court*

When evaluating the circumstances and gravity of the offense alleged in the section 602 petition to have been committed by the minor, the juvenile court must give weight to any relevant factor including, but not limited to, the actual behavior and mental state of the person, the person's degree of involvement in the crime, the level of harm the person actually caused, and their mental and emotional development. (§707, subd. (a)(3)(E)(ii).) The court shall also consider evidence offered that indicates that the minor's victim had trafficked, sexually abused, or sexually battered the minor. (§ 707, subd. (a)(3)(E)(iii).)

The juvenile court found that the circumstances and gravity of G.C.'s offenses support his transfer to adult court. In arriving at that conclusion, the court fully

13

incorporated the facts it relied on in support of the finding made as to G.C.'s criminal sophistication, discussed *ante*. It found G.C. planned and took steps to rob the victim and he, with co-participant Fabian, shot the victim multiple times and ultimately killed him.

With respect to G.C.'s behavior and degree of involvement, the court found his level of planning and participation was significant. All three participants were close in age to one another, G.C. and A.U. were with Fabian when he set up the Instagram account, borrowed the car, and told the car's owner there was a plan to rob the victim, and G.C. was there when the car's owner said it was not a good idea to commit a crime in a borrowed car. And, G.C. aided in the ambush of the victim by hiding in the back seat of the car and he participated in shooting the victim, who died from the injuries he sustained.

The court did not find any mitigating circumstances in G.C.'s background information. As noted, *ante*, G.C. was raised in a stable household with his parents and siblings, he did not report having suffered any childhood trauma, he had average intellectual functioning, adequate capacity to make judgments and decisions, and there was no evidence of his having a major mental health disorder.

G.C. claims consideration of the circumstances and gravity of the offense alleged in the petition is the least important section 707 criterion because the issue at the transfer hearing is not whether the minor committed the act but whether that person is amenable to the care, treatment and training available through juvenile court facilities.

It is well settled that the section 707 criteria to determine whether a minor should be transferred to the criminal court are based on the premise that the minor did in fact commit the offense. (*People v. Superior Court* (*Jones*) (1998) 18 Cal.4th 667, 682.) And, as we explained *ante*, the juvenile court is required to consider all five of the section 707 criteria in making its determination, although the statute does not dictate that one criterion be given greater weight or less weight than any other. (*Miguel R., supra*, 100 Cal.App.5th at p. 166.) Accordingly, contrary to G.C.'s suggestion, his degree of involvement in the crime and the harm he caused are proper considerations, and the weight to be accorded those factors is up to the juvenile court's discretion.

G.C. makes the same insufficiency of the evidence claim as to this section 707 criteria as he did with respect to the criminal sophistication factor, that is, Fabian's descriptions of G.C.'s participation in planning and executing the offense are inherently unreliable. We find that argument unavailing for the reasons given in our discussion of the sophistication factor, *ante.*

C. *The Finding That the Minor Is Not Amenable to Rehabilitation*

The juvenile court's lengthy detailed written opinion establishes that it considered and weighed all the section 707 factors. Although it found three factors supported the conclusion that transferring G.C. to the criminal court was not appropriate (notably G.C.'s near exemplary conduct in juvenile hall), it found G.C. is ultimately not amenable to treatment while under the juvenile court's jurisdiction based upon his high level of criminal sophistication and the severity of his offenses, as well as his lack of candor with

15

Dr. Berg and Officer Gutierrez, which the juvenile court found to be an affirmative barrier to treatment and rehabilitation in the juvenile court system.

In support of its finding that the People had met its burden of proof by clear and convincing evidence that G.C. is not suitable for, and cannot be rehabilitated within, the juvenile court system, the court explained:

"When the court examines the evidence of planning, and [G.C.'s] significant role in the violent offense, his use and discharge of a firearm (that was repeatedly discharged) at a drug dealer over vape pens, when [G.C.] was suffering from no diagnosed mental or physical condition at the time of the offense, with no inducement by others to participate in the offense, and the court views his post offense conduct in the recorded threat of a potential witness against him, the court considers [G.C.] not amenable to treatment in the juvenile court jurisdiction and considers [G.C.'s] violent conduct is likely to recur as demonstrated by his conduct and action after the homicide."

The juvenile court added that it "strongly concurs with the Probation Officer's analysis that despite being raised in a positive family environment with no apparent psychological impairments, [G.C.'s] statements to the witnesses in this matter indicated a blatant lack of empathy or accountability and strongly indicate a resistance to rehabilitation. His actions were carefully planned, callous, and deliberate, and his post-offense conduct reflected continued (threats) and criminal sophistication incompatible with the rehabilitative goals of the juvenile justice system."

16

G.C. argues that the juvenile court did not give sufficient weight to his progress and positive response to the structure and intervention provided in the juvenile hall and posits that he is "a perfect candidate for rehabilitation in the juvenile court system. " That argument is essentially a request for this court to reweigh the evidence and substitute our judgment for that of the juvenile court, which is beyond our authority. (*In re G.L.* (2014) 222 Cal.App.4th 1153, 1166.)

## DISPOSITION

The juvenile court's order granting the section 707 order transferring G.C. to the jurisdiction of the criminal court is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.


We concur:

McKINSTER
J.
CODRINGTON
J.